324 So.2d 613 (1975)
Vernon H. MULLINS and Harvie Jean Mullins
v.
The TRAVELERS INSURANCE CO. and Grady W. Smith.
No. 12746.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
*614 Massey & Robinson by Charles W. Robinson, West Monroe, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by Ronald Lee Davis, Jr. Monroe, for defendants-appellees.
Before HALL, DENNIS and BURGESS, JJ.
DENNIS, Judge.
Plaintiffs, Mr. and Mrs. Mullins, appeal from a judgment rejecting her demands for personal injuries and his demands for vehicle damage and her medical expenses arising out of an automobile accident on Louisiana Highway 593 in Morehouse Parish. A state police patrol car being driven by a defendant, Trooper Grady Smith, was involved in the accident. Other defendants are the Dept. of Public Safety, Division of State Police, and its insurer, Travelers Insurance Company. We affirm the judgment of the trial court rejecting plaintiffs' demands.
Louisiana 593 is a two-lane black-topped highway running northerly and southerly. About two-tenths of a mile north of the site of the accident there is a slight curve. At the time of the accident around 4:10 p.m., the road was wet because of an earlier rain. There were three vehicles proceeding southerly some distance in front of the state trooper prior to the accident. Mrs. Mullins was in the third automobile. The second automobile was being driven by an unknown driver, and the first automobile was being driven by Mrs. Mullins' mother.
Mrs. Mullins' home is east of Louisiana 593, and there is a private driveway from the home perpendicular to the highway at the accident site. Mrs. Mullins' mother turned left into the Mullins driveway, and the second automobile immediately in front of Mrs. Mullins continued southward. Mrs. Mullins testified that as she came out of the curve, which is north of her home, she was driving approximately 35-40 miles an hour when she saw the two vehicles ahead of her. She testified that she turned on her left turn signal and that she checked her rearview mirror approximately 425 feet from her driveway and applied her brakes, slowing down, and again checked in her mirror when she was approximately 130 feet from her driveway. She says on neither occasion did she observe in the rearview mirror of her automobile the trooper's vehicle approaching from the rear. She said that she had intended to look into her mirror once again before making her left turn but that she was unable to do so before the accident occurred.
The officers who investigated the accident testified as to the position of the automobiles after the impact and as to the location of debris on the highway indicating the point of impact on the highway. The lower court found that the left wheels of Mrs. Mullins' automobile were approximately one and one-half feet across the center line of the highway in the northbound lane when the accident occurred approximately 35-40 feet north of the Mullins' driveway.
Trooper Smith testified that he was on his way to the scene of an accident some six miles south of the driveway but there was no emergency, he was not speeding or using his siren or emergency lights. He said that just before reaching the curve north of the Mullins residence, *615 he began following the three vehicles at some distance. As cars were traveling out of the curve at approximately 15 or 20 miles per hour, he reduced his speed to coincide approximately with the speed of these vehicles. He says he was behind Mrs. Mullins' vehicle approximately 45 or 50 feet and that he observed Mrs. Mullins' mother's vehicle turn into the driveway when he was about 250 feet from the driveway. Mrs. Mullins, at this time, was still traveling at a slow speed and had not signaled for a left turn, according to the trooper. After the first vehicle completed its left turn into the Mullins driveway and the other two vehicles in front of him were slowly continuing southward, Trooper Smith began his passing maneuver. He says he was about 150 feet from the driveway, accelerating and sounding his horn, signaling his intent to pass when he was fully into the passing lane. He says he saw the left rear light on the Mullins vehicle come on when he was 45 or 50 feet from the driveway, and only a few feet from Mrs. Mullins' vehicle. The trooper says the left rear light simply came on and did not begin flashing in the fraction of a second before impact.
Trooper Smith says that Mrs. Mullins' car drifted or angled across the center line of the highway and that he attempted to avoid the collision, but without success, the right front of his car striking the left rear of the Mullins car when the Mullins car was partially in the passing lane.
The trial court accepted the trooper's version of the accident and rejected plaintiffs' demands. The lower court found the trooper was not negligent and that the accident was caused by Mrs. Mullins' actions in improperly executing a left turn. The lower court went into considerable detail in written reasons for judgment stating his basis for accepting the defendant's version of the accident rather than the plaintiffs' version.
In Bamburg,[1] the duty of the left turning driver to maintain a lookout for rearward approaching traffic, was imposed not only on the left turning driver who had discovered the approaching traffic, but as well, on the defendant turning driver who had not discovered the approaching traffic. The court naturally concluded that looking but not seeing what was there to be seen is tantamount to not looking at all. See also Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
Appellants also contend applicability of the last clear chance or discovered peril doctrine. Accepting the lower court's version of the accident in the absence of manifest error, the trooper did not discover Mrs. Mullins' position of peril in time to have taken action to avoid the collision. Johnston v. Boston, 293 So.2d 655 (La.App., 2d Cir. 1974); Burge v. Doty, 279 So.2d 273 (La.App., 2d Cir. 1973).
The lower court further found Mrs. Mullins failed in her duty to observe the approaching vehicle before she began her left turn. The variance in the testimony presented credibility questions and we do not disturb the lower court's judgment in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Mrs. Mullins admitted that she did not attempt to observe rearward traffic during the last 130 feet she traveled. This admission, together with some of her pretrial statements, physical evidence at the accident site and the testimony of defendants' witnesses, leads us to conclude the trial court did not manifestly err in its finding.
The proffer of testimony by plaintiffs in rebuttal to the testimony of Trooper Smith regarding his speed is in the record. Assuming, but not holding that the proffered rebuttal should have been allowed and considered by the trial court, we have considered *616 the statement of what the rebuttal testimony would have been and have weighed this with the record and the lower court's finding. The result is not changed. Mrs. Mullins was negligent in making a left turn under the circumstances, even if it be assumed the trooper was negligent by either or both, traveling at an unreasonable rate of speed and not sounding his horn.
At appellants cost, the judgment is
Affirmed.
NOTES
[1] Bamburg v. Nelson, 313 So.2d 872 (La.App.2d Cir. 1975). See also Ardoin v. Chachere, 207 So.2d 574 (La.App.3d Cir. 1968).