McCLENDON, Judge.
Plaintiff appealed a judgment rejecting his claim for damages arising out of an automobile accident. Defendant Louisiana Farm Bureau Mutual Insurance Company, insurer of the vehicle driven by defendant Mary F. Clement, answered the appeal seeking reversal of that portion of the trial court judgment rejecting its reconventional demand. We affirm.
This accident involved two vehicles, a 1968 Chevrolet van owned and driven by plaintiff and occupied by two other male passengers, and a 1976 Chrysler Cordoba owned by defendant John Crymes, driven by defendant Mary F. Clement with the owner’s consent, insured by defendant Louisiana Farm Bureau Mutual Insurance Company, and occupied by defendant Mary Clement’s two small children, ages six and three years, as passengers.
Both vehicles were northbound on Louisiana Highway No. 138, a two-lane blacktopped highway. The accident occurred at about 3:10 p. m. on October 17, 1977, a clear, dry day, as the Chrysler was overtaking the van to pass it and the van was commencing a left turn into a dirt road leading to a drilling rig where plaintiff worked as a roughneck.
Plaintiff’s demands against defendant John Crymes were dismissed with prejudice prior to trial.
Counsel stipulated as to the amount of damages to both vehicles. $1850.00 was stipulated as the property damage to the van and $1882.94 as the property damage to the Chrysler. Because of a $100 deductible, the reconventional demand by Louisiana Farm Bureau under its subrogation was $1782.94.
The testimony of plaintiff and his passengers is in conflict with that of defendant Mary Clement in many particulars, but it was established that the Chrysler had been following the van for a number of miles, possibly as many as twelve, and that the highway was generally winding with a limited number of safe passing areas.
Mrs. Clement testified that the van was being driven in a rather erratic manner, sometimes slowing without apparent reason, and that she had attempted to pass on two other occasions prior to the accident. The first time plaintiff moved across the center line and the second time he speeded up so that she gave up on each of these attempts.
Plaintiff and his passengers all testified they were aware of the Chrysler behind them, but all denied seeing any attempt to pass or any action on plaintiff’s part to prevent such attempts.
The testimony concerning the events immediately prior to the collision itself are similarly conflicting. Plaintiff and his companions relate how plaintiff looked into his outside rearview mirror and gave both a left turn blinker signal as well as an arm signal, at least 150 feet from the dirt road into which he intended to turn left. Defendant Clement, on the other hand, saw no turn signal, electric or manual, and no brake lights come on when the van suddenly began to slow down after she had begun to pass. She testified she had no idea what plaintiff was about to do, so she applied her brakes immediately when she saw the van begin to slow.
All of this took place just north of a curve on a straight stretch of road with 0.4 of a mile of passing area between double yellow markings. Plaintiff testified that he had to slow to about 30 miles per hour to negotiate this curve. His passenger Cupit testified that plaintiff was going about 45 mph when he came out of the curve and slowed to about 30 mph to make the left turn. Plaintiff testified that when he put on his blinker and gave his arm signal, he looked back and defendant Clement was “like coming out of the curve.” At that point he said he was 150 to 200 feet from the dirt road. Van passenger Cupit testified plaintiff was 150 feet from the turn-off at this time.
In any event, the evidence established that it was 436 feet from the north end of the double yellow no-passing zone coming out of the curve to the dirt turn-off road. If defendant Clement was coming out of *513 the curve when plaintiff was 150 feet to 200 feet from this turn-off, this gave plaintiff a 236 to 286 foot lead on defendant and ample opportunity for defendant to start accelerating as she reached the end of the double yellow line to attain the speed of about 50 mph which she testified she had reached when she saw plaintiff’s van begin to slow down. She then forcibly applied her brakes, because she did not know what he was going to do next in view of his past performance that day.
The physical evidence of skid marks establishes that when defendant’s brakes locked the wheels, the left side of her vehicle was already in the southbound lane and continued to skid at an angle farther into that lane some 64 feet until impact, at which time her vehicle was wholly in the left or southbound lane.
Of particular importance here is plaintiff’s testimony that after he saw the Chrysler coming out of the curve (when he was 150 to 200 feet from his turn-off) he did not see it again until it hit him. (Tr. pg. 77, 1. 15 et seq.)
We agree with the trial court’s finding that plaintiff failed to observe what he should have observed and began his left turn before that turn could be made with reasonable certainty of its safety.
Louisiana Revised Statutes 32:104; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Mullins v. Travelers Insurance Co., 324 So.2d 613 (La.App. 2d Cir. 1975); Bamburg v. Nelson, 313 So.2d 872 (La.App. 2d Cir. 1975); Johnston v. Boston, 293 So.2d 655 (La.App. 2d Cir. 1974).
Even assuming that plaintiff gave the left turn signals he claimed he did and that his blinker light was working, this did not give him the right of way to continue his left turn, but he was bound to continue to observe defendant Clement. (Johnston, supra).
Had plaintiff done so he certainly would have seen defendant increasing her speed and beginning to move across the center line to pass. His failure to continue to observe and to begin his left turn without doing so was negligence which was the proximate cause of this accident.
Counsel for appellant argued strenuously in brief that the physical evidence conclusively established sole negligence on defendant Clement’s part. In support of this he prepared a very elaborate scale drawing (Diagram A) of that section of the highway between the north end of the curve and the scene of the collision at the dirt turn-off road. On this section he sketched a series of vehicles, which apparently are intended to represent the Chrysler driven by defendant Clement at various time and distance intervals prior to the first visible skid marks found to have been made by that vehicle. All of this, as we understood it, was to show that rather than having begun her passing maneuver when she came out of the curve as defendant testified, she did not begin it until she was much closer to impact point.
We find that this diagram is based upon an unwarranted assumption, i. e., that defendant Clement came out of this curve, which plaintiff testified could not be negotiated at 50 mph and in which he had slowed to 30 mph, at a speed of 50 mph and maintained that constant speed to point of impact. It further ignores plaintiff’s own testimony that when he was 150 to 200 feet from his turn-off road, he saw defendant Clement “like coming out of the curve” behind him. It also assumes that the passing maneuver requires moving into the passing lane before acceleration is begun to attain passing speed. Defendant Clement’s estimates of her distance behind plaintiff’s van (V2 to 3 car lengths) at various times before this curve and in this curve were obviously very poor in the light of the other evidence on this subject. In each instance she was clearly confused as to what constituted a “car length”. For these reasons we are not persuaded by Diagram A that the physical facts establish defendant Clement’s exclusive negligence and certainly does not overcome our finding of negligence on plaintiff’s part as set out above herein.
The trial court made its ruling rejecting defendant Louisiana Farm Bureau’s *514 reconventional demand in a supplemental opinion filed some two weeks after the first, noting therein its failure to rule on this aspect of the case. That opinion contains no factual basis for its conclusion of contributory negligence on the part of defendant Clement which would preclude recovery on its subrogation claim by defendant Louisiana Farm Bureau, however, we must assume that this supplemental opinion had a factual basis not inconsistent with the ruling on the main demand. We find that the trial court would have been justified in finding that plaintiff did in fact signal a left turn as plaintiff and his two companions testified, and that failure of defendant Clement to see that signal amounted to contributory negligence on her part.
We, therefore, affirm the trial court’s judgment on the main demand at appellant Lynn Choate’s cost; and on the reconven-tional demand at defendant Louisiana Farm Bureau Mutual Insurance Company’s cost.